# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| **CORMAN KOKOSING CONSTRUCTION COMPANY**<br>6235 Westerville Road, Suite 200<br>Westerville, Ohio 43081,<br><br>*Plaintiff*,<br><br>v.<br><br>**BRANSCOME INC. d/b/a BRANSCOME CONCRETE**<br>432 McLaws Cir.<br>Williamsburg, VA 23185<br><br><u>*Also Serve Statutory Agent:*</u><br>Corporation Service Company<br>Statutory Agent for BRANSCOME INC.<br>100 Shockoe Slip Fl 2<br>Richmond, VA 23219<br><br>*Defendant.* | Case No.: 2:21-CV-00594 |

## COMPLAINT FOR MONEY DAMAGES

For its Complaint against BRANSCOME INC. d/b/a BRANSCOME CONCRETE ("Defendant" or "Branscome"), Plaintiff, Corman Kokosing Construction Company ("CKCC"), states and alleges as follows:

### PARTIES, JURISDICTION, VENUE

1. CKCC is an Ohio corporation that has its principal place of business in Maryland.

2. CKCC is authorized to transact business in Virginia and regularly does business in Virginia.

3. CKCC is in the business of, among other things, heavy-highway construction, including for project owners like the City of Chesapeake, Virginia (the "City").

4. Upon information and belief, Defendant is a Virginia corporation that has its principal place of business in Virginia, and it regularly and continuously does business in Virginia.

5. Upon information and belief, Defendant operates under the fictitious name, "Branscome Concrete."

6. Defendant is in the business of, among other things, supplying ready-mix concrete.

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332, as the matter in controversy is between citizens of different states and exceeds the sum of $75,000.00.

8. There is a present and actual controversy between the parties.

9. Venue is properly vested in this Court pursuant to 28 U.S.C. §1391 because, among other things, this is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTS

10. On or about August 20, 2018, CKCC, as "Contractor," entered into a contract (the "Prime Contract") for a project known as the 22nd Street Bridge Replacement, located in the City (the "Project").

11. The Project generally consisted of the replacement of the 22nd Street Bridge and associated roadway, site, and drainage improvements.

12. Time was of the essence. The Prime Contract required substantial completion within 450 days of the Notice to Proceed (or by 4/1/2020) and final completion within 480 days of the Notice to Proceed (or by 5/1/2020).

13. The Prime Contract included "liquidated damages" provisions. Under the Prime Contract, for each day of delay past the substantial completion date of 4/1/20, CKCC is liable to the City in the amount of $2,500 in liquidated damages; for each day of delay past the final completion date of 5/1/20, CKCC is liable to the City in the amount of $2,500 in liquidated damages.

14. On April 4, 2019, CKCC, as "Contractor," and Defendant, as "Supplier," entered into a Purchase Order in relation to the Project. (A true and accurate copy of the Purchase Order, excluding documents incorporated therein, is attached hereto and incorporated herein as **Exhibit 1**).

15. The Purchase Order generally required Defendant to timely supply "Class A3 General" concrete, "Class A4 General" concrete, and "Class A4 Low Shrinkage" concrete.

16. The Purchase Order also provides that the Defendant was required to perform its obligations under the Purchase Order "in accordance with the terms [and] provisions of the [Prime Contract]."

17. Time was of the essence with respect to Defendant's concrete deliveries. Section 5 of the Purchase Order broadly and unequivocally provided as follows: "[Defendant] agrees to furnish the materials called for under this Purchase Order within the following time or times to wit: **In accordance with and so as not to delay the Project Schedule and as may be further described in Exhibit A.**" (Ex. 1 at § 5 (emphasis in original).)

18. As detailed below, Defendant failed to furnish the materials called for under the Purchase Order in accordance with and so as not to delay the Project Schedule, failed to perform its obligations in accordance with the terms and provisions of the Prime Contract, and committed other material breaches of the Purchase Order.

19. The Prime Contract and the Purchase Order incorporated the 2016 version of the Virginia Department of Transportation ("VDOT") Road and Bridge Specifications (the "VDOT Specs").

20. Section 404.3.c of the VDOT Specs specified the minimum placement rate for concrete, including the concrete supplied by Defendant under the Purchase Order.

21. Certain of the concrete Defendant supplied was for what was known as the Abutment B pour, conducted on 12/16/19. For the 70 cubic yard ("CY") Abutment B concrete pour, Section 404.3.c specified that 25% of the pour quantity be placed each hour. For the Abutment B concrete pour, the requirements of Section 404.3.c equate to a minimum placement rate of 17.5 CY per hour and a maximum total pour time of four (4) hours.

22. Utilizing a pump truck for concrete placement, CKCC's concrete order from Defendant for the Abutment B pour specified 30-minute spacing between the first and second trucks and 20-minute spacing for all remaining trucks. This would have resulted in 150 minutes (2.5 hours) of time between the first truck and the seventh truck to meet the 70 CY order. Expecting standard ten (10) CY loads of concrete on each truck, the minimum placement rate would have been 20 CY per hour for the first hour and 30 CY per hour for remaining quantity to complete the pour. Those placement rates would have exceeded the minimum requirements of Section 404.3.c of the VDOT Specs.

23. Defendant failed to timely deliver the concrete as required.

24. At a December 18, 2019, Progress Meeting (held two days after the Abutment B concrete pour), the City stated that the concrete placement at Abutment B was "Not per spec 25% per hour." (*See* 12/18/19 Progress Meeting Minutes, attached hereto as **Exhibit 2**.) The City

4

stated that, as a result, the "inspection staff [would] evaluate [the] concrete when [the] forms are removed." (*Id.*)

25. On January 3, 2020, CKCC received an email from the City's representative reiterating that "the placement time exceeded the specification of 25% per hour and the concrete would be assessed following formwork removal." (*See* 1/3/2020 Email from RK&K to CKCC, attached hereto as **Exhibit 3**.) Because of that delayed concrete delivery, "the Project will need [CKCC's] plan to determine the depth/integrity of the concrete at what appears to be a [cold] joint, and based on results a plan of action to correct deficiency." (*Id.*)

26. On January 15, 2020, the City then stated that it was rejecting the abutment on the basis that "concrete placement Abutment B stem wall – Not per spec 25% per hour." (*See* 1/15/2020 Progress Meeting Minutes, attached as **Exhibit 4**.) The City followed that up on the same day with an email saying the abutment was rejected and noting that "what appears to be a [cold] joint is clearly visible as well as unconsolidated concrete at the joint." (*See* 1/15/2020 email from RK&K to CKCC, attached hereto as **Exhibit 5**.)

27. The City's rejection of Abutment B prevented CKCC from erecting the remaining spans of structural steel until the issue was resolved.

28. Ultimately, on March 18, 2020, CKCC was able to obtain the City's approval to accept the abutment as placed with an approved repair procedure, which released CKCC to complete the structural steel erection. This approval process for the repair took more than three (3) months from the date of the Abutment B pour.

29. Defendant's concrete delivery delay caused a sixty-nine (69) calendar day delay to the Project's substantial completion date and a sixty-eight (68) calendar day delay to the Project's final completion date.

30. As a result of Defendant's concrete delivery delay, the City assessed against CKCC liquidated damages in the amount of $342,500.

31. In addition to the liquidated damages the City assessed against CKCC, CKCC incurred delay damages of $196,335.86 for extended field overhead costs and additional project maintenance costs.

32. Moreover, CKCC incurred damages of $53,809.84 in concrete repair costs, caused by Defendant's late concrete delivery.

33. Defendant has wrongly claimed that CKCC owes it $45,197.41.

34. CKCC owes Defendant nothing. The Purchase Order provides that CKCC has "the right to retain out of any payments due or to become due to the [Defendant] an amount sufficient to completely protect [CKCC] from damage resulting" from any breach of the Purchase Order "until the situation has been completely eliminated or adjusted by the [Defendant]." (Ex. 1 at § 3.)

## **Count One – Breach of Contract**

35. CKCC incorporates the preceding paragraphs of this Complaint as if fully re-written herein.

36. The Purchase Order is a valid contract.

37. CKCC performed its obligations under the Purchase Order.

38. Defendant materially breached the Purchase Order by, individually and collectively, and without limitation:

    a. Failing to furnish the materials called for under the Purchase Order in accordance with and so as not to delay the Project Schedule, as required by Section 5 of the Purchase Order.

    b.  Failing to perform its obligations in accordance with the terms and provisions of the Prime Contract and Section 404.3.c of the VDOT Specs.

    c.  Failing to save CKCC harmless from "any and all claims . . . or liability, on account of any act or omission of the [Defendant]," as required by Section 8(b) of the Purchase Order. (Ex. 1 at § 8(b).)

    d.  Failing to "save [CKCC] harmless from and indemnify [CKCC]" with respect to "any breach by the [Defendant] of any part of this Purchase Order" and with respect to any "claim or other liability asserted against [CKCC] arising out of the [Defendant's] performance hereunder," as required under by Section 3 of the Purchase Order. (Ex. 1 at § 3.)

    e.  Failing to save CKCC and the Owner harmless from "any and all loss, damage, costs, expenses and attorney's fees suffered or incurred on account of any of the . . . matters" identified in Section 8 of the Purchase Order. (Ex. 1 at § 8.)

  39.  As a result of the Defendant's material breaches of contract, CKCC has incurred damages of at least $592,645.70, plus costs, expenses, and attorneys' fees, for which Defendant is liable to CKCC.

  WHEREFORE, CKCC demands judgment against the Defendant in an amount exceeding $75,000.00, to be proven at trial, including costs, expenses, and attorney fees, plus pre-judgment and post-judgment interest, and such other legal or equitable relief as this Court deems just and proper.

Dated: October 29, 2021

Respectfully submitted,

**CORMAN KOKOSING CONSTRUCTION COMPANY**

*/s/ Clay S. Hester*
William R. Mauck, Jr. (VSB No. 25439)
Email: wmauck@spottsfain.com
Patricia Bugg Turner (VSB No. 72775)
Email: pturner@spottsfain.com
Clay S. Hester (VSB No. 93051)
Email: chester@spottsfain.com
SPOTTS FAIN PC
411 East Franklin Street, Suite 600
Richmond, Virginia 23219
Telephone: (804) 697-2000
Facsimile:  (804) 697-2100
*Counsel for Plaintiff, Corman Kokosing Construction Company*